# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **DAVID MCKENZIE** | § | |
| *Plaintiff* | § | |
| | § | |
| **VS.** | § | |
| | § | **CIVIL ACTION NO.**_____ |
| | § | |
| **TIMOTHY SAWICKI** | § | |
| *Defendant* | § | |
| | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **DAVID MCKENZIE**, referred to herein as Plaintiff, complaining of Defendants **TIMOTHY SAWICKI ("Officer Sawicki"), in his individual capacity**, hereinafter called Defendant, and for cause of action, would respectfully show unto the Court and jury the following:

## I.
## NATURE OF THE CASE

**THE CLAIM:** City of Rockport police officer TIMOTHY SAWICKI used excessive force against DAVID MCKENZIE in violation of his individual rights under the Fourth and Fourteenth Amendments to the United States Constitution when shattered his car window and tased him on 7 March 2021, without factual or legal cause to do so, after arresting him for allegedly assaulting Officer Sawicki with his vehicle. Officer Sawicki, on information and belief, was not actually assaulted by Mr. McKenzie, as evidenced by the audio available from body camera footage of the incident. Thereafter, Officer Sawicki caused criminal proceedings to occur against Plaintiff, until 15 November 2021, when the Aransas County Attorney's Office declined the case. Accordingly, Plaintiff brings a claim under the Due Process Clause of the Fourteenth Amendment pursuant to his

1

prosecution and the deprivation of his liberty by fabricated evidence. The actions alleged herein are of such a nature as to shock the conscience and are cruel and unusual in their oppressiveness.

## II.
## PARTIES

1. Plaintiff, **DAVID MCKENZIE** is a resident of the state of Texas.

2. The **CITY OF ROCKPORT, TX** is a political subdivision of the State of Texas and the Rockport Police Department is an agency operated thereunder.

3. The CITY OF ROCKPORT, TX Police Department is funded and operated by the CITY OF ROCKPORT, TX City Council. Mayor Lowell Timothy (Tim) Jayroe is the chief executive of the CITY OF ROCKPORT, TX. Ms. Vanessa Shrauner is the City Manager of the City of Rockport, TX.

4. Mayor Jayroe and/or Ms. Shrauner, is responsible for implementing the policies and decisions of the CITY OF ROCKPORT, TX City Council as the City's primary administrator.

5. Mayor Jayroe and the City Council are tasked with appropriating, reviewing, and implementing the CITY OF ROCKPORT, TX Police Department budget, policies, procedures, practices, and customs, including the acts and omissions related thereto, at issue in this lawsuit.

6. Chief Gregory Stevens is the Chief of Police of the CITY OF ROCKPORT, TX and the primary policymaker tasked with creating, implementing, and reviewing the CITY OF ROCKPORT, TX Police Department policies, procedures, practices, and customs.

7. The CITY OF ROCKPORT, TX may be served by and through Mayor Tim Jayroe, at the CITY OF ROCKPORT, TX City Hall, 2751 SH 35 Bypass, Rockport, TX 78382 or wherever he may be found.

8. Defendant **TIMOTHY SAWICKI** is a police officer employed by the CITY OF ROCKPORT, TX Police Department and at all times material herein was a police officer acting in the course and scope of his employment for the City of Rockport, TX. He may be served at 714 E. Concho St., Rockport, TX 78382, or wherever he may be found. Defendant is being sued in his individual capacity.

## III.
## JURISDICTION

2

9.   The subject matter in controversy and damages sought are within the jurisdictional limits of this Court.

10.   This Court also has jurisdiction over this suit under 42 U.S.C. § 1983.

11.   Venue is also appropriate in the Southern District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in City of Rockport, Aransas County, Texas, which is in the Corpus Christi Division of the Southern District of Texas.

## IV.

## FACTS AND ALLEGATIONS

12.   On 7 March 2021, DAVID MCKENZIE had his constitutional rights violated when he was tased by Defendant TIMOTHY SAWICKI following the false allegation that he assaulted Defendant Sawicki with his vehicle during an interaction where Defendant Sawicki was working traffic near a fire.

13.   On information and belief, the incident was captured on a body camera device and a dash camera.

14.   At approximately 1523 on 7 March 2021, Defendant Sawicki was called to assist the local Volunteer Fire Department with a fire. The fire was located near FM 2165 and FM 1781. Defendant Sawicki positioned his vehicle, on information and belief, near the intersection to prevent travel in the direction of the fire.

15.   After directing traffic for approximately 40 minutes, Defendant Sawicki came into contact with Plaintiff, Mr. David McKenzie, who was traveling in the direction of the fire.

16.   On information and belief, when Mr. McKenzie approached the area, Defendant Sawicki put his hands in the air to communicate to Plaintiff that he needed to stop, which he did.

17.   Thereafter, Defendant Sawicki and Mr. McKenzie then had extensive conversation regarding whether he could permissibly travel in the direction of the fire. On information and belief, Plaintiff indicated to Defendant Sawicki that he wanted to see what was going on with respect to the fire.

18. The body camera footage begins with a quick shot of a vehicle – presumably Mr. McKenzie's – and then almost immediately goes to an obscured view, after which point only audio is available.

19. Defendant Sawicki can be heard telling Mr. McKenzie "…Sir…Turn around…Back up and turn around! What are you doing? You don't see the big fire?!"

20. Defendant Sawicki then screams, "Hey! Hey! You're gonna run me over?!. (Plaintiff: "Well, turn around!")...Stop your car now!...Stop your car…! Put it into park!..."

21. Defendant Sawicki does not scream or otherwise exclaim in any manner indicated he was *actually* struck by Plaintiff's vehicle.

22. Defendant Sawicki then gets on the radio, requesting backup: "116. Can you send me another unit out here – 2165 and 1781 – I had a male subject ***almost intentionally hit me***."

23. The dispatcher then asks for clarification about what occurred. Defendant Sawicki repeats it again: "He was upset, and ***almost intentionally hit me***."

24. Defendant Sawicki then, on information and belief, shatters Mr. McKenzie's driver-side window with a blunt instrument during this exchange.

25. Defendant Sawicki then yells at Mr. McKenzie to get out of the car: "Get out of the car now! Get out!" Defendant Sawicki then grunts and presumably gets into the car to go after Mr. McKenzie.

26. Defendant Sawicki then gets on the radio and tells the dispatcher the following: "116. He ran my foot over…" He repeats it again, telling the dispatcher he's in pursuit of the vehicle that ran his car over. The dispatcher asks whether he needs an ambulance to which he responds, "I think I'm ok right now."

27. Upon hearing this allegation, Mr. McKenzie scoffs, flatly denying that he struck Defendant Sawicki with his vehicle.[5]

28. Defendant Sawicki then proceeds to follow Mr. McKenzie to his home, where he orders him out of his car repeatedly and tases him — with no legal cause whatsoever to do so — before he gets out of the car.

---

[5] The police reports mention an alleged witness, an L.K., whose number is included in the report and whom the police allege told them she saw the vehicle strike Defendant Sawicki's "foot or leg." On information and belief, no formal statement was ever taken from this witness, nor was any investigation done regarding her vantage point, distance, or anything else corroborative of this account.

29. Thereafter, Mr. McKenzie is seated on the floor of his garage, and is understandably irate and cursing. Throughout the rest of the encounter, he repeatedly tells his now-dearly departed wife, Kathleen, to go inside and not tell the officers anything or interact with them.

30. Throughout this interaction, however, there is conversation about Mr. McKenzie allegedly running over Defendant Sawicki's foot. As he has throughout the entire encounter, Mr. McKenzie soundly denies ever running over Defendant Sawicki's foot and continues calling him dishonest for saying he had.

31. Mr. McKenzie's wife, Kathleen, points out several times that Defendant Sawicki is walking and interacting normally, despite alleging that a multi-ton vehicle had just run over his foot.

32. At one point in the aftermath of the tasing, Defendant Sawicki's shadow can be seen as he walks from a point further down the McKenzies' driveway back up to his police vehicle. His gait is normal and seemingly unaffected.

33. Defendant Sawicki then loads Mr. McKenzie into the back of his police vehicle and transports him to the Aransas County Detention Center. Upon arrival at the Detention Center, Mr. McKenzie refused EMS treatment. During the time of the initial arrival, Defendant Sawicki interfaced with EMS and confirmed he'd allegedly had his foot run over.

34. As Mr. McKenzie was fitted with a mask and taken inside, Defendant Sawicki deliberately turns off his body camera. His interaction with EMS, which he puts in his report, is not captured by the body camera footage, despite that being crucially important to preserve the evidence of the alleged assault on a peace officer.

35. Defendant Sawicki allegedly sought treatment at a healthcare facility following this encounter and was given prescriptions; however, the criminal discovery provided while Mr. McKenzie was on bond for these alleged offenses did not include any proof corroborative of this visit, nor any imaging (e.g. MRI, X-Ray) to assess the alleged injury.

36. Defendant McKenzie was subsequently booked into the Aransas County Detention Center on the charges of Assault (or Aggravated Assault) on a Public Servant, Evading Arrest or Detention with a Motor Vehicle, and Resisting Arrest, Search, or Transportation, spending, on information and belief, four days in jail before making bond, incidental to which he was,

on information and belief, subject to conditions including "restrictions on his travel and other restraints not shared by the public generally."[6]

37. Despite all of the allegedly overwhelming evidence submitted to the Aransas County Attorney's Office, County Attorney Amanda Oster sent a letter to the Aransas County District Clerk's Office, County Clerk's Office, and Sheriff's Office noting that they had reviewed the case and "determined that this case will not be filed for criminal prosecution." This letter is dated 15 November 2021.

38. Between the date he was booked into jail and the date the criminal prosecution terminated in his favor, Mr. McKenzie incurred not only the costs of bond but also the costs to retain his criminal defense attorney, Mr. Scott Ellison.

39. On information and belief, Mr. McKenzie was then released from bond sometime following that letter.

## V.

## CAUSES OF ACTION

### COUNT ONE – FABRICATED EVIDENCE CLAIM

### Violation of the Fourteenth Amendment Due Process Clause Pursuant to 42 U.S.C. §1983 Against Defendant Sawicki

40. Plaintiff incorporates by reference each of the preceding paragraphs, repeating and alleging the respective allegations as though fully delineated below.

41. Mr. McKenzie had his rights under the Fourteenth Amendment violated by virtue of the pursuit and continuation of his criminal prosecution for an Assault/Aggravated Assault on a Peace Officer that never occurred.

42. Evidence corroborative of this alleged event was not presented to the County Attorney, on information and belief, nor presented to Mr. McKenzie for evaluation and potential use in his criminal defense case.

---

[6] *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) (citing *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 301 (1984)).

43. This does not comport with basic police procedure nor basic preservation of evidence, and casts substantial doubt over whether Defendant Sawicki was indeed struck.

44. There are no medical records corroborative of this alleged event and the one alleged witness never had a statement taken from her, on information and belief, beyond a few sentences put into a police report.

45. Customarily, Assault on a Peace Officer is an offense prosecuted by prosecuting authorities with grave seriousness, considering the crucial role law enforcement officers play in society. Such an allegedly "clear" offense with allegedly substantial evidence not being prosecuted is far from ordinary with respect to this particular offense.

46. The body camera footage shows Defendant Sawicki moving around easily and with a seemingly unimpaired gait for the period of time during the encounter from the time the vehicles arrived at Mr. McKenzie's home to the time he turned the body camera off before meeting with the EMTs.

47. Deliberately choosing not to capture his interaction with the EMTs over his alleged injury to his foot defies logic in an instance where any reasonable officer sustaining this alleged injury would undoubtedly want to preserve any and all evidence related to the injury.

48. At the time the alleged striking occurred, Defendant Sawicki does not yell, scream, exclaim, or even simply say that Mr. McKenzie drove over his foot: the basic response expected if a vehicle with a weight of multiple tons drove over your foot.

49. Plaintiff McKenzie soundly and flatly denied striking Defendant Sawicki, both immediately after the alleged event and throughout the course of the time he was in custody and being booked into the detention center.

50. The Fourteenth Amendment ensures a person accused of a criminal offense is afforded due process in the course of the prosecution of that offense.

51. As the Supreme Court opined in *McDonough v. Smith*, a 2019 case, a fabricated evidence claim operates similarly to a malicious prosecution claim at common law, "[Mr. McKenzie's] claim requires him to show that the criminal proceedings against him – and consequent deprivations of his liberty – were caused by [Defendant Sawicki's] malfeasance in fabricating evidence."[7]

---

[7] *Ibid.*

52. Earlier in that interaction, Defendant Sawicki had shattered Mr. McKenzie's front window, presumably because he had grown angered by Mr. McKenzie's refusal to turn his vehicle around. This is evidenced by his repeatedly saying he "almost intentionally" hit him with his vehicle, showing his intent to attempt to catalog anything that could be construed as bad acts on the part of Mr. McKenzie.

53. Pursuant to the allegation of his foot having been driven over – by far the most serious of the allegations for which Mr. McKenzie was ultimately not prosecuted – Mr. McKenzie was booked, released on bond, and forced to pay for a criminal defense attorney, all before being completely absolved of any criminal liability.

54. Mr. McKenzie's liberty was deprived, both physically and with respect to the limitations placed upon him, on the basis of this allegation.

55. Accordingly, Mr. McKenzie seeks redress for the deprivation of his due process rights through the pursuit of a criminal prosecution where he did not assault the officer as alleged, and that fact, on information and belief, was known to Defendant Sawicki.

56. As the Supreme Court opined in *McDonough v. Smith*, the accrual (e.g. the date the statute of limitations begins to run) in a fabricated-evidence case is "not a complete and present cause of action…to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing. ***Only once the criminal proceeding has ended in the defendant's favor…will the statute of limitations begin to run.***"[8]

57. Accordingly, the statute of limitations in this case began to run on 15 November 2021.

## VI.

## QUALIFIED IMMUNITY UNDER § 1983

58. City Employees may be entitled to qualified immunity as to their individual liability. That immunity is waived, however, upon a showing by the Plaintiff that:

   a. The individual's acts deprived the party of constitutional rights under color of law;

   b. The deprived rights were clearly established, constitutional rights in existence at the time of the acts complained of; and

---

[8] *Id.,* at 2158 (citing *Wallace v. Kato*, 549 U.S. 384, 393 (2007)).

c.  Such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

59. As the Supreme Court recognized the Second Circuit's analysis on the issue (without expressly stating itself), Mr. McKenzie advances the same articulation of the right in that case: that he had a "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer."[9]

60. It hardly needs mentioning that not only are citizens entitled not to have their liberty restrained due to the fabrication of evidence by a government officer, but that said deprivation of liberty is undoubtedly afoul of the constitution, directly counter to fundamental notions of due process.

61. Defendant Sawicki, acting under color of state law, deprived Mr. McKenzie of his civil liberties, without due process of law, by alleging an assault that never occurred.

62. The acts of Defendant Sawicki were unreasonable under the circumstances when viewed objectively.

63. The acts of Defendant Sawicki clearly violated established rights under the Constitution and statutes. A reasonable person would have known that Mr. McKenzie's constitutional rights of due process were enshrined by the Fourteenth Amendment to the Constitution and that Defendant's actions were violative of such rights.

## VII.
## DAMAGES

64.  Mr. McKenzie repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

65.  Plaintiff seeks monetary relief and for judgment of all the other relief to which he deems himself entitled.

66.  Mr. McKenzie's deprivations were foreseeable and directly and proximately caused by the fabrication of evidence against him.

---

[9] *Id.,* at 2155 (citing *Manuel v. City of Joliet*, 137 S. Ct. 911 (1994) (quoting *Zahrey v. Coffey*, 221 F.3d 342, 349 (CA2 2000)); *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959).

67.  Mr. McKenzie is thus entitled to recover all actual damages allowed by law. The Defend-
ant's conduct shows malice, wanton disregard, and reckless or callous indifference to
Plaintiff's constitutional rights.

68.  As a direct and proximate result of the occurrence underlying this lawsuit, Mr. McKenzie
suffered:

     a.  Deprivation of his liberty; and
     b.  Emotional distress, torment, and mental anguish.

69.  Plaintiff seeks to recover reasonable attorney's fees and costs of court, pursuant to 42
U.S.C. § 1983 and § 1988.

## XIII.
## ATTORNEY'S FEES

70. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and
hereby demands attorney's fees under 42 U.S.C. §1988.

## IX.
## JURY DEMAND

71. Plaintiff respectfully requests a jury trial in this matter.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered
against Defendant, for an amount in excess of the jurisdictional minimum of this Court.

Plaintiff further prays for all other relief, both legal and equitable, to which he may show
himself justly entitled.

Respectfully Submitted,

**WEBB CASON & MANNING, P.C.**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone:    (361) 887-1031
Facsimile:    (361) 887-0903

_____ */s/ Matthew S. Manning*_____
MATTHEW S. MANNING
State Bar No.: 24075847
Southern Dist. ID No. 3504172
General Correspondence Email:
E: matt@wcctxlaw.com

ATTORNEY FOR DAVID MCKENZIE